• George Starke, J.
The plaintiff, American Can Company, and Samuel Breiter & Company, Inc. (hereinafter referred to as Breiter), defendant and third-party claimant, each make claim to a certain can-closing machine, presently in the possession of plaintiff.
The plaintiff named U. S. Canning Corporation as a defendant but replevied the machine from Breiter, without naming Breiter as a party defendant, although plaintiff knew the chattel was in the possession of Breiter. Breiter, having properly intervened, interposed an answer demanding affirmative relief in its favor for the possession of the chattel.
It is the contention of Breiter that the plaintiff entered into an arrangement with a Vinco Distributing Corporation (hereinafter referred to as Vinco), consisting of two instruments labeled ‘1 Equipment Lease ’ ’ and ‘ ‘ Installment Purchase ’ ’ which constituted a conditional sale within the meaning of the provisions of section 61 of the Personal Property Law. Such conditional sales agreement not having been filed, Breiter contends that it was void pursuant to the provisions of section 65 of the Personal Property Law as against Breiter, a subsequent mortgagee and purchaser without notice. Accordingly, Breiter claims it is entitled to the possession of the chattel as against the plaintiff whose claim, it alleges, depends upon an unfiled conditional sales agreement.
*752 The plaintiff claims title to the chattel on the ground that it never parted with ownership, but merely leased the machine to Vinco. It is to be noted that the plaintiff did not name Vinco a party defendant in this action.
The issue is thus whether the instrument labeled ‘ ‘ Equipment Lease ” as amplified by or coupled with the instrument labeled “Installment Purchase ” constitute a “lease” or a “conditional sale ” within the definition contained in section 61 of the Personal Property Law.
In construing these instruments, whether the agreement was one or the other is essentially a question as to the underlying intent of the parties (Matter of New York World-Telegram Corp. v. McGoldrick, 298 N. Y. 11).
The plaintiff had leased the machine for several years to U. S. Canning Corporation on an annual basis starting June 3, 1952. On or about August 28, 1954 U. S. Canning Corporation went out of business, and a new corporation, Vinco Distributing Corporation, commenced conducting its business at the premises formerly occupied by U. S. Canning Corporation, and took possession of the machine.
During the month of September, 1954 the plaintiff entered into dealings directly with Vinco by dealing with an officer thereof, J. Vincent, also known as J. Vincent Calabrese. ' The plaintiff accepted the corporate check of Vinco as a payment on account on September 17, 1954 and also accepted further payments from Vinco for a total of $256.29. As early as September 1,1954 the plaintiff communicated directly with Vinco by letter. On September 20, 1954 the plaintiff delivered in person to Mr. Vincent the instrument entitled “Installment Purchase ”, the second sheet of which is entitled “ Equipment Schedule,” and the instrument entitled “Equipment Lease”. Although plaintiff’s representative denies that the words “Vinco Dis. Corp.” were on the “ Installment Purchase ” and “ Equipment Schedule ’ ’ instruments at the time he handed them to Mr. Vincent, it is significant to note that plaintiff did not produce its copies thereof. What is even more significant is that plaintiff’s representative testified that the plaintiff destroyed its copy in January, 1957, long after this action had been commenced and long after plaintiff had knowledge that Mr. Vincent asserted in his affidavit of April 16, 1956, which had been submitted on a motion for summary judgment, that the two instruments when delivered to him on September 20, 1954 had the words “ Vinco Dis. Corp.” written on them.
Plaintiff’s attorney concedes that neither the instrument labeled 1‘ Equipment Lease ’ ’ nor the instrument labeled *753 “Installment Purchase ” was ever filed in the office of the Register of any county.
It was subsequent to the afore-mentioned arrangement of September 20, 1954 that Vinco borrowed $5,500 from Breiter and executed a chattel mortgage to Breiter dated October 1, 1954 which included the machine in question among other chattels. Said chattel mortgage was duly filed in the office of the Register of Queens County on the 4th day of October, 1954 bearing file No. 59097. It was also filed in the office of the Register of New York County on October 2,1954 under file No. 46741.
Plaintiff offered no proof that there was a tag, plate, mark, identification or anything on the machine to indicate that the machine was the property of the plaintiff when Vinco executed the mortgage so as to charge Breiter with notice or knowledge of plaintiff’s claim to title. On the other hand, Breiter testified that there definitely was none.
Thereafter the mortgagor Vinco defaulted under the chattel mortgage. Breiter took possession of the chattels by reason of said default. In addition thereto, a judgment upon a statement and confession of judgment was entered in favor of Breiter against Vinco in the City Court, County of Queens, on the 10th day of January, 1955 in the amount of $5,522. Execution was issued to a city marshal upon said judgment and an execution sale was held at the premises 12-01 Astoria Boulevard, Long Island City, New York, on the 4th day of February, 1955, at which sale Breiter purchased all right, title and interest of the judgment debtor in and to all the chattels contained in the said premises for the amount of $2,500. Thereupon, Breiter became not only the mortgagee in possession of the chattels covered by the mortgage which included the can-closing machine but also became the owner of all right, title and interest of the judgment debtor in and to any equity in the said chattels.
Section 61 of the Personal Property Law provides as follows: “ 61. Definitions. In this act ‘ conditional sale ’ means (1) any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (2) any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract.”
*754 Paragraph 17 of the alleged equipment lease, dated September 20, 1954, provides as follows: ‘ ‘ The lessee may purchase any items of equipment covered by this lease at the applicable selling prices specified in the Schedules and upon the Lessor’s uniform terms and conditions of sale. ’ ’
Although the said paragraph 17 is silent as to what would happen -as to past rentals paid at a time when the lessee would exercise its option to purchase, the documentary evidence shows that the agreement and intent was that all past rentals paid up to the date of the exercise of the option should and would be credited against the purchase price. This is found in the provisions contained in the instrument labeled “ Installment Purchase ” which refers particularly to the “ Equipment Lease ” of September 20, 1954 and indicates therein that a credit for past rentals paid and if unpaid to be paid, were and would be credited against the purchase price of the machine. The “ Equipment Lease ” gave.the lessee the absolute right to renew the lease for successive annual periods subject only to the approval of lessee’s credit. If Vinco renewed the lease for a period of three years the total rentals would be “a sum substantially equivalent to the value of the goods. ’ ’
The instruments set forth the purchase price, the amount of the down payment, the other credits, if any, the terms of payment of the balance of the purchase price, and the interest to be paid on said installment payments. The ‘ ‘ Installment Purchase ” agreement provides for a credit of rentals paid and contains a complete statement of the purchase price, of how it is arrived at, and of the terms of payment of the balance of the installments with interest. The “Equipment Lease” instrument provides that the customer must make all repairs at its own expense and pay for all repair parts, that the plaintiff renders no service in connection with the machine unless the customer pays for same, that the customer pays for delivery of the machine F.O.B. point of shipment, and that the customer pays the sales tax. The “Installment Purchase” agreement indicates not only that Vinco was entitled to a credit for past rentals paid, to be applied against the purchase price, but also that it had the right then to make up the rental payments which had not been paid in previous years, to be applied against the purchase price. It also indicates that as a part of the said “ Installment Purchase ” agreement the plaintiff, nevertheless, required Vinco to sign the alleged ‘ ‘ Equipment Lease. ’ ’
An agreement of this type even though entitled 6 ‘ Equipment Lease ” which required the lessee to pay rentals but gave the lessee an option to purchase the equipment and apply past *755 rentals against the purchase price was held to constitute under the New York law a “ conditional sales contract ” within the meaning of section 61 of the Personal Property Law (United States v. Voges, 125 F. Supp. 916, 918).
In the afore-mentioned case, the court pointed out that the lessor provides no services under the alleged “Equipment Lease,” and that all repairs and taxes are the responsibility of the lessee. These are also the facts in the case at bar as shown by the provisions of the alleged “Equipment Lease” dated September 20, 1954. In the foregoing case, the purchase price was fixed at a specific amount. This is likewise true in the case at bar.
The court said as follows: ‘ ‘ Thus the ‘ equipment leases ’ in the instant case are by the terms of Section 61, in law, conditional sales contracts. ’ ’
So long as the lessee pursuant to the alleged “Equipment Lease ’ ’ had the option to purchase the equipment and apply any rentals paid against the purchase price the instrument constitutes a conditional sale irrespective of whether the lessee actually makes the rental payments or not. It is the right given to purchase the equipment which has the effect of making the instrument a conditional sale and not the actual compliance therewith.
Thus it has been held that a conditional sales agreement which provided for a forfeiture of all sums paid on buyer’s default was nevertheless subject to the provisions of the Uniform Conditional Sales Act (Sturman v. Polito, 161 Misc. 536).
Considering all of the oral and documentary evidence adduced upon the trial bearing on the dealings between the plaintiff and Vinco, the situation and relationship of the said parties, their intent and the purpose sought to be achieved by them, and considering the provisions of the instruments in evidence, including the instruments entitled “Equipment Lease”, and “Installment Purchase ”, the intent and purpose of the parties (plaintiff ;and Vinco) when the said instruments were delivered by the plaintiff to Vinco on September 20, 1954, on which date Mr. Vincent signed the “Equipment Lease” instrument as . required by the provisions of the ‘ ‘ Installment Purchase ’ ’ instrument, the court finds that it was the intent and purpose of" the parties to enter into an agreement of installment purchase or conditional sale of the can-closing machine No. 8318 involved herein, and that the. said instruments together constitute an installment purchase or conditional sales agreement "within the purview of section 61 of the Personal Property Law.
*756 Since the instruments were not filed in the Register’s office they were void as against a bona fide purchaser pursuant to section 65 of the Personal Property Law. Breiter was in fact a bona fide mortgagee and purchaser of the said machine and came into lawful possession thereof by reason of the default by Vinco in payment of the mortgage, and also by virtue of purchase of the said machine at a city marshal’s sale. A conditional vendee in possession has the right to mortgage the chattel. Breiter was and is entitled to the lawful possession of the machine as against the plaintiff. Its right to the chattel was superior to that of the plaintiff, a conditional vendor whose conditional sales agreement was not filed.
Although plaintiff knew that Breiter was in actual possession of the said machine, it caused to be issued a writ of replevy pending this action, without making Breiter a party to the action and it took possession of the said machine from Breiter on or about July 13, 1955 as a result of which Breiter has been deprived of the use of said machine since July 13,1955.
As conceded by the plaintiff the fair market value of the machine of which plaintiff took possession on July 13, 1955 was $1,900.42, and that the depreciation was at the rate of 4% per annum which, from July 13, 1955 to January 17, 1958, the date of this trial, amounts to $195.93. Therefore, the fair market value of the said machine on the date of trial was the sum of $1,704.49. Breiter was deprived of the use of the machine for said period and sustained damages for the loss of the use of said machine during that period in the amount of $1,477.11, the measure of said damages for loss of use being the fair rental value of said machine during said period, in accordance with the plaintiff’s testimony as to the rental value of the machine. It is to be noted here that the damages for loss of use continue at the rate of $1.70 per day from January 17, 1958 to the date of judgment.
This being a replevin action, judgment is hereby rendered in favor of Samuel Breiter & Co., Inc., the impleaded defendant and third-party claimant, as against American Can Company, the plaintiff, adjudging that Samuel Breiter & Co., Inc. is hereby entitled to recover from the American Can Company possession of the machine as described in Schedule A of plaintiff’s complaint, and that in case possession of said machine is not delivered to Samuel Breiter & Co., Inc., then, in that event, Samuel Breiter & Co., Inc. recover of American Can Company the amount of $1,704.49. Further, it is the judgment of this court that Samuel Breiter & Co., Inc. recover of American Can Company as damages for the loss of use of the said machine for the period of July 13, 1955 to January 17, 1958 the date of *757 trial, the amount of $1,295.51 (not $1,477.11, inasmuch as this court’s jurisdiction is limited to a total judgment not exceeding $3,000). It is further adjudged that Samuel Breiter & Co., Inc. recover of American Can Company interest from the date of entry of the judgment herein, together with the costs and disbursements of this action.